FILED

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

207 JAN -9 PM 1: 11

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

**IN RE:  Seroquel Products Liability Litigation,
MDL DOCKET NO. 1769**

6:06-cv-1851

**Jannette M. Abear, John R. Abeyta, Rebecca Anderson, Individually and as the
Proposed Administrator of the Estate of Rhonda L. Nichols, Deceased, Monique
Armstrong, Daniel S. Baker, John Balbastro, Vaughn D. Banister, James H.
Barnebee, IV, Michael R. Bates, Bonnie A. Belille, Catherine Berkhan, Carnetta T.
Best, Michael P. Bierlich, Kathryn Blackwell, Carole Bonebrake, Phyona L.
Brackney, Lois C. Brown, Robert J. Cartier, Eloise Casto, Tonya Chmielorz, Daniel
S. Clauson, Angela L. Colwell, Christopher R. Conroy, Charles J. Conyers, Marcia
Corey, Connie M. Curley, Carolyn N. Curtis, Dorian D. Cuyler, Victoria Davidson,
as Next Friend of J.D., a Minor, Allen D. Dewitt, William D. Dixon, Debbie L.
Dupont, Ruth A Dupont, Amber D. Dutra, Brenda S. Echols, Dennis J. Eckert,
Laura S. Elfast, Gerald R. Elkins, Mary V. Emelio, Joan M. Episcopo, Lynda L.
Epps, Jasmine T. Fairbanks, James Fairley, Miguel A Fernandez, Tabitha Floyd,
Paula Francis, Francis R. Freeman, III, Georgia M. Fullard, Heather D. Gahman,
Luz G. Garcia, Michael G. Gebre, Pamela D. Getschmann, Richelle M Goettel,
Janie Grass, Barbara A. Gray, Margarita S. Guzman, Marion L. Hall, Jr., David D.
Haller, Martha J Hanning, Sherry L. Harrington, Christine M. Hernandez, Jason
A. Holmes, Lori L. Hulbert, Terry K. Ivers, Linda M. Jennings, Beverly Johnson,
Julie K. Johnson, Tom Johnson, Carolyn S. Jones, Danny C. Jones, Stephen T.
Karczmarek, Jamie Kelly-Zieska, Kathe Kirby, Amy Klinebough, Mark Kohanek,
As Next Friend Of D.K., A Minor, Christopher M. Laroe, Debra G. Livesay,
Cynthia F. Lopez, Janet Lowe-Bernard, James S. Macdonald, Carolyn Madison,
Malinda K. Malek, Pamela A. Martinez, Barbara J. McCartney, Katrina
McMillian- Jones, Leone McMullen, on Behalf of Amika McMullen, an
Incapacitated Adult, Robert Michael, Allison Migdal, Marcella Miles, Barbara V.
Miqueli, Jennifer Miranda, Rodney W. Mitchell, Lisa L. Moon, Roy L. Moritz, Jr.,
Jonathan A. Morrow, Jr., Sharon Myhre, as Next Friend of S.M., a Minor,
Charlesdrake K. Namauu, Patricia Nazzaro, as Next Friend of K. Z., a Minor, Aira
J. Nelson, Cheryl Nelson, Virginia Niswander, Kathy R. Nunley, John W. Otto,
Alma J. Parks, Tyler J. Peterson, Beverly Pinion, Individually and as the Proposed
Administrator of the Estate of Roberta Mazzarini, Deceased, Sandra L. Pinta, Velva
M. Queen, Terrance M. Reinsmith, Clifford M. Richardson, Melody Richmond,
Gary J. Ring, James L. Robbins, Danielle Roberts, Bridget R. Rose, Carmen G.
Russell, Linda D. Schubert, Catherine L. Scott, James E. Selario, Mary Sigmon,
Myron Simonsky, Alvenson Singleton, Sherree M. Sipple, Connie M. Smith,
Elizabeth Smith, Jennifer J. Smith, Robert B. Spangler, Phillip W. Spencer, Jeffrey**

**L. Stacy, Terry L. Stephens, Gary Storck, as Next Friend of J.S., a Minor, Robin Strickland-Garland, William B. Sumner, Jr., Kathleen Tanner, Fonda J. Townsend, Cheryl A. Trizzle, Richard Unger, David L. Walker, Carlease Warner, as Next Friend of Q.W., a Minor, Dawn M. White, Willie White, Vera Williams, Michael W.Wilson, Robert G. Windsor, Evelyn A. Winn, Starlett L. Wood, Simone Woolard, as Next Friend of D.L., a Minor, Candace Wright, David A. Young, Matthew R. Young, Nicholas J. Zinzeris v. AstraZeneca LP, et al.,**

**MDL DOCKET NUMBER**

_____/

## ANSWER OF ASTRAZENECA LP AND ASTRAZENECA PHARMACEUTICALS LP TO PLAINTIFFS' ORIGINAL COMPLAINT

Defendants AstraZeneca LP and AstraZeneca Pharmaceuticals LP (collectively "AstraZeneca") answer Plaintiffs' Original Complaint as follows:

This Answer is filed on behalf of AstraZeneca LP and AstraZeneca Pharmaceuticals LP only, and AstraZeneca makes no response on behalf of other entities. More specifically, AstraZeneca makes no response to the allegations of Plaintiffs' complaint on behalf of Astra USA, Inc., AstraZeneca AB, AstraZeneca PLC, and KBI Sub Inc. AstraZeneca states that, to its knowledge, there are no separate entities named AstraZeneca R&D Boston and AstraZeneca R&D Wilmington.

## I.   INTRODUCTION

1.  This is a civil action brought on behalf of Plaintiffs regarding personal injury damages which occurred as a result of Plaintiffs' ingestion of the prescription drug, Seroquel, also known as Quetiapine Fumarate (hereinafter referred to as "Seroquel"). Seroquel was manufactured, marketed, distributed and sold to Plaintiffs by Defendants and/or its representatives.

**ANSWER:**   AstraZeneca admits that, pursuant to approval by the Food and

Drug Administration ("FDA"), it manufactures, markets, distributes, and sells

SEROQUEL® (quetiapine fumarate) for prescription by licensed physicians in the

United States.  AstraZeneca denies that it sold SEROQUEL® to Plaintiffs, and states that

SEROQUEL® is dispensed by pharmacies pursuant to prescriptions written by licensed

physicians.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 1.

## II.   PARTIES

### A.   PLAINTIFFS

2.  Plaintiffs are individuals who currently reside in, and are citizens of, the following U.S. States:

### List of Plaintiffs (1-151)

| | | | | |
|---|---|---|---|---|
| 1 | Abear | M. | Jannette | FL |
| 2 | Abeyta | R. | John | ID |
| 3 | Anderson, Individually and as the Proposed Administrator of the Estate of Rhonda L. Nichols, Deceased | | Rebecca | FL |
| 4 | Armstrong | | Monique | FL |
| 5 | Baker | S. | Daniel | NM |
| 6 | Balbastro | | John | NC |
| 7 | Banister | D. | Vaughn | MN |
| 8 | Barnebee, IV | H. | James | FL |
| 9 | Bates | R. | Michael | NC |
| 10 | Belille | A. | Bonnie | MN |
| 11 | Berkhan | | Catherine | FL |
| 12 | Best | T. | Carnetta | FL |
| 13 | Bierlich | P. | Michael | NH |
| 14 | Blackwell | | Kathryn | WA |
| 15 | Bonebrake | | Carole | FL |
| 16 | Brackney | L. | Phyona | AZ |
| 17 | Brown | C. | Lois | FL |
| 18 | Cartier | J. | Robert | MN |
| 19 | Casto | | Eloise | GA |
| 20 | Chmielorz | | Tonya | NH |
| 21 | Clauson | S. | Daniel | FL |
| 22 | Colwell | L. | Angela | OH |
| 23 | Conroy | R. | Christopher | MN |
| 24 | Conyers | J. | Charles | GA |

| 25 | Corey | | Marcia | IL |
|----|-------|-----|---------|-----|
| 26 | Curley | M. | Connie | FL |
| 27 | Curtis | N. | Carolyn | TN |
| 28 | Cuyler | D. | Dorian | FL |
| 29 | Davidson, as Next Friend of J.D., a Minor | | Victoria | NC |
| 30 | Dewitt | D. | Alien | NC |
| 31 | Dixon | D. | William | FL |
| 32 | Dupont | L. | Debbie | LA |
| 33 | Dupont | A | Ruth | MN |
| 34 | Dutra | D. | Amber | ID |
| 35 | Echols | S. | Brenda | FL |
| 36 | Eckert | J. | Dennis | PA |
| 37 | Elfast | S. | Laura | IN |
| 38 | Elkins | R. | Gerald | NC |
| 39 | Emelio | V. | Mary | VA |
| 40 | Episcopo | M. | Joan | FL |
| 41 | Epps | L. | Lynda | FL |
| 42 | Fairbanks | T. | Jasmine | MN |
| 43 | Fairley | | James | NC |
| 44 | Fernandez | A | Miguel | FL |
| 45 | Floyd | | Tabitha | MS |
| 46 | Francis | | Paula | FL |
| 47 | Freeman, III | R. | Francis | ME |
| 48 | Fullard | M. | Georgia | NC |
| 49 | Gahman | D. | Heather | KS |
| 50 | Garcia | G. | Luz | FL |
| 51 | Gebre | G. | Michael | WA |
| 52 | Getschmann | D. | Pamela | TX |
| 53 | Goettel | M | Richelle | WA |
| 54 | Grass | | Janie | FL |
| 55 | Gray | A. | Barbara | TX |
| 56 | Guzman | S. | Margarita | WA |
| 57 | Hall, Jr. | L. | Marion | MS |
| 58 | Haller | D. | David | FL |
| 59 | Hanning | J | Martha | WV |
| 60 | Harrington | L. | Sherry | WA |
| 61 | Hernandez | M. | Christine | FL |
| 62 | Holmes | A. | Jason | WA |
| 63 | Hulbert | L. | Lori | UT |
| 64 | Ivers | K. | Terry | FL |
| 65 | Jennings | M. | Linda | WV |

| 66 | Johnson | | Beverly | CA |
|---|---|---|---|---|
| 67 | Johnson | K. | Julie | WI |
| 68 | Johnson | | Tom | IL |
| 69 | Jones | S. | Carolyn | WV |
| 70 | Jones | C. | Danny | WA |
| 71 | Karczmarek | T. | Stephen | PA |
| 72 | Kelly-Zieska | | Jamie | MN |
| 73 | Kirby | | Kathe | AR |
| 74 | Klinebough | | Amy | WA |
| 75 | Kohanek, as Next Friend of D.K., a Minor | | Mark | MN |
| 76 | Laroe | M. | Christopher | NH |
| 77 | Livesay | G. | Debra | FL |
| 78 | Lopez | F. | Cynthia | FL |
| 79 | Lowe-Bernard | | Janet | FL |
| 80 | MacDonald | S. | James | MN |
| 81 | Madison | | Carolyn | OH |
| 82 | Malek | K. | Malinda | WA |
| 83 | Martinez | A. | Pamela | CA |
| 84 | McCartney | J. | Barbara | BS |
| 85 | McMillian- Jones | | Katrina | AL |
| 86 | McMullen, on Behalf of Amika McMullen, an Incapacitated Adult | | Leone | WA |
| 87 | Michael | | Robert | FL |
| 88 | Migdal | | Allison | KY |
| 89 | Miles | | Marcella | IA |
| 90 | Miqueli | V. | Barbara | FL |
| 91 | Miranda | | Jennifer | FL |
| 92 | Mitchell | W. | Rodney | FL |
| 93 | Moon | L. | Lisa | ID |
| 94 | Moritz, Jr. | L. | Roy | IA |
| 95 | Morrow, Jr. | A. | Jonathan | FL |
| 96 | Myhre, as Next Friend of S.M., a Minor | | Sharon | MN |
| 97 | Namauu | K. | Charlesdrake | WA |
| 98 | Nazzaro, as Next Friend of K.Z., a Minor | | Patricia | FL |
| 99 | Nelson | J. | Aira | MN |
| 100 | Nelson | | Cheryl | KY |
| 101 | Niswander | | Virginia | FL |
| 102 | Nunley | R. | Kathy | KY |
| 103 | Otto | W. | John | IL |

| 104 | Parks | J. | Alma | GA |
|-----|-------|-----|------|-----|
| 105 | Peterson | J. | Tyler | WA |
| 106 | Pinion, Individually and as the Proposed Administrator of the Estate of Roberta Mazzarini, Deceased | | Beverly | FL |
| 107 | Pinta | L. | Sandra | FL |
| 108 | Queen | M. | Velva | OH |
| 109 | Reinsmith | M. | Terrance | FL |
| 110 | Richardson | M. | Clifford | OH |
| 111 | Richmond | | Melody | FL |
| 112 | Ring | J. | Gary | IN |
| 113 | Robbins | L. | James | FL |
| 114 | Roberts | | Danielle | MN |
| 115 | Rose | R. | Bridget | NC |
| 116 | Russell | G. | Carmen | FL |
| 117 | Schubert | D. | Linda | NC |
| 118 | Scott | L. | Catherine | OR |
| 119 | Selario | E. | James | FL |
| 120 | Sigmon | | Mary | NC |
| 121 | Simonsky | | Myron | FL |
| 122 | Singleton | | Alvenson | MI |
| 123 | Sipple | M. | Sherree | MN |
| 124 | Smith | M. | Connie | FL |
| 125 | Smith | | Elizabeth | NH |
| 126 | Smith | J. | Jennifer | FL |
| 127 | Spangler | B. | Robert | SD |
| 128 | Spencer | W. | Phillip | IL |
| 129 | Stacy | L. | Jeffrey | CA |
| 130 | Stephens | L. | Terry | FL |
| 131 | Storck, as Next Friend of J.S., a Minor | | Gary | MN |
| 132 | Strickland-Garland | | Robin | FL |
| 133 | Sumner, Jr. | B. | William | FL |
| 134 | Tanner | | Kathleen | FL |
| 135 | Townsend | J. | Fonda | KY |
| 136 | Trizzle | A. | Cheryl | IL |
| 137 | Unger | | Richard | FL |
| 138 | Walker | L. | David | WV |
| 139 | Warner, as Next Friend of Q.W., a Minor | | Carlease | FL |
| 140 | White | M. | Dawn | FL |

| 141 | White | | Willie | FL |
|-----|-------|---|--------|-----|
| 142 | Williams | | Vera | MN |
| 143 | Wilson | W. | Michael | FL |
| 144 | Windsor | G. | Robert | ID |
| 145 | Winn | A. | Evelyn | RI |
| 146 | Wood | L | Starlett | WA |
| 147 | Woolard, as Next Friend of D.L., a Minor | | Simone | VA |
| 148 | Wright | | Candace | MS |
| 149 | Young | A. | David | FL |
| 150 | Young | R. | Matthew | OR |
| 151 | Zinzeris | J. | Nicholas | SC |

**ANSWER:**    AstraZeneca lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 2, and therefore denies same.

**B.    DEFENDANTS**

3.    Defendant **ASTRAZENECA LP**, is a company organized and existing under the laws of the State of Delaware with its principal place of business at 50 Otis Street, Westborough, MA 01581-4500.  At all material times herein, this Defendant has conducted business and advertised, marketed, promoted, sold and/or distributed Seroquel in the State of Massachusetts.  This Defendant may be served with process of this Court upon its registered agent for service in Massachusetts, to wit: CT Corporation System, 101 Federal Street, Boston, MA 02110.

**ANSWER:**    AstraZeneca admits that AstraZeneca LP is a Delaware limited partnership, but denies that its principal place of business is located at 50 Otis Street, Westborough, MA 01581-4500.  AstraZeneca admits that AstraZeneca LP's principal place of business is located in Delaware.  AstraZeneca admits that AstraZeneca LP advertises, markets, promotes, distributes, and sells SEROQUEL®, a prescription medication, in the State of Massachusetts.  AstraZeneca admits that AstraZeneca LP's registered agent for service of process in Massachusetts is CT Corporation System, 101 Federal Street, Boston, MA 02110.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 3.

4.     Defendant **ASTRAZENECA PHARMACEUTICALS LP**, is the general partner of AstraZeneca LP, and is a company organized and existing under the laws of the State of Delaware with its principal place of business in Delaware.  At all material times herein, this Defendant has conducted business and advertised, marketed, promoted, sold and/or distributed Seroquel in the State of Massachusetts.  This Defendant may be served with process of this Court upon its registered agent for service in Massachusetts, to wit: CT Corporation System, 101 Federal Street, Boston, MA 02110.

**ANSWER:**   AstraZeneca admits that AstraZeneca Pharmaceuticals LP is the

general partner of AstraZeneca LP.  AstraZeneca admits that AstraZeneca

Pharmaceuticals LP is a Delaware limited partnership with its principal place of business

in Delaware.  AstraZeneca further admits that AstraZeneca Pharmaceuticals LP

advertises, markets, promotes, distributes, and sells SEROQUEL®, a prescription

medication, in the State of Massachusetts.  AstraZeneca admits that AstraZeneca

Pharmaceuticals LP's registered agent for service of process in Massachusetts is CT

Corporation System, 101 Federal Street, Boston, MA 02110.  AstraZeneca denies any

remaining or inconsistent allegations of paragraph 4.

5.     Defendant **KBI SUB INC.**, is the limited partner of AstraZeneca LP, and is a company organized and existing under the laws of the State of Delaware with its principal place of business in New Jersey.  At all material times herein, this Defendant has conducted business and advertised, marketed, promoted, sold and/or distributed Seroquel in the State of Massachusetts.  This Defendants may be served with process of this Court pursuant to M.G.L. 156D § 15.10, by serving the Massachusetts Secretary of State, Corporations Division, who shall then mail the summons and complaint via CM/RRR to Defendants' proper address at: KBI SUB Inc., c/o Merck & Co., Inc., One Merck Drive, Whitehouse Station, New Jersey 08889-0100.

**ANSWER:**   AstraZeneca admits that KBI Sub Inc. is a Delaware corporation

with its principal place of business in New Jersey.  AstraZeneca further admits that KBI

Sub Inc. is the limited partner of AstraZeneca LP.  AstraZeneca denies that KBI Sub Inc.

is a proper defendant in this action.  AstraZeneca lacks knowledge or information

sufficient to form a belief as to the truth of the remaining allegations of paragraph 5, and

therefore denies same.

6.      Defendant **ASTRAZENECA AB**, is the general partner of AstraZeneca
Pharmaceuticals LP, and is a foreign company with its principal place of business at SE-
151 85 Södertälje, Sweden.  At all material times herein, this Defendant has conducted
business and advertised, marketed, promoted, sold and/or distributed Seroquel in the
State of Massachusetts.  This Defendant may be served with process via Registered,
Return Receipt Requested, International Mail to its principal place of business pursuant
to Articles 10(a) and 15 of the Hague Convention on the Service Abroad of Judicial and
Extrajudicial Documents in Civil or Commercial Matters..

**ANSWER:**    AstraZeneca admits that AstraZeneca AB is a Swedish corporation

with its principal place of business in Sweden.  AstraZeneca further admits that

AstraZeneca AB is the general partner of AstraZeneca Pharmaceuticals LP.  AstraZeneca

denies that AstraZeneca AB is a proper defendant in this action.  AstraZeneca lacks

knowledge or information sufficient to form a belief as to the truth of the remaining

allegations of paragraph 6, and therefore denies same.

7.      Defendant **ASTRA U.S.A., INC.**, is the limited partner of AstraZeneca
Pharmaceuticals LP, and is a company organized and existing under the laws of the State
of New York with its principal place of business at 128 Sidney Street, Cambridge, MA
02139.  At all material times herein, this Defendant has conducted business and
advertised, marketed, promoted, sold and/or distributed Seroquel in the State of
Massachusetts.  This Defendant may be served with process of this Court pursuant to
M.G.L. 156D § 15.10, by serving the Massachusetts Secretary of State, Corporations
Division, who shall then mail the summons and complaint via CM/RRR to Defendants'
proper address at: Astra U.S.A., Inc., 1800 Concord Pike, Wilmington, DE 19850-5437.

**ANSWER:**    AstraZeneca admits that Astra USA, Inc. is a New York

corporation, but denies that its principal place of business is located at 128 Sidney Street,

Cambridge, MA 02139.  AstraZeneca admits that the principal place of business of Astra

USA, Inc. is located in Delaware.  AstraZeneca further admits that Astra USA, Inc. is a

limited partner of AstraZeneca Pharmaceuticals LP.  AstraZeneca denies that Astra USA,

Inc. is a proper defendant in this action.  AstraZeneca lacks knowledge or information

sufficient to form a belief as to the truth of the remaining allegations of paragraph 7, and

therefore denies same.

8.     Defendant **ASTRAZENECA PLC**, is the ultimate parent company of all
Defendants, and is a foreign company with its principal place of business at 15 Stanhope
Gate, London, W1K 1LN, England, United Kingdom.  This Defendant's principal place
of business in the United States is located at 35 Gatehouse Drive, Waltham, MA 02451.
At all material times herein this Defendant has conducted business and advertised,
marketed, promoted, sold and/or distributed Seroquel in the State of Massachusetts.  This
Defendant may be served with process via Registered, Return Receipt Requested,
International Mail to its principal place of business pursuant to Articles 10(a) and 15 of
the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in
Civil or Commercial Matters.

**ANSWER:**     AstraZeneca admits that AstraZeneca PLC is a corporation

organized under the laws of the United Kingdom but denies that its principal place of

business in the United States is located at 35 Gatehouse Drive, Waltham, MA 02451.

AstraZeneca admits that AstraZeneca PLC is the ultimate parent company of

AstraZeneca LP and AstraZeneca Pharmaceuticals LP.  AstraZeneca denies that

AstraZeneca PLC is a proper defendant in this action.  AstraZeneca lacks knowledge or

information sufficient to form a belief as to the truth of the remaining allegations of

paragraph 8, and therefore denies same.

9.     These companies have acted together and in concert to cause Plaintiffs'
damages, and shall be hereinafter referred to collectively as "Defendants."

**ANSWER:**     AstraZeneca admits that Plaintiffs purport to refer to all named

Defendants collectively as "Defendants," but denies that AstraZeneca caused Plaintiffs'

damages.  AstraZeneca denies that the defendants in this action may be properly referred

to collectively and states that this Answer is filed on behalf of AstraZeneca LP and

AstraZeneca Pharmaceuticals LP only.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 9.

## III.   JURISDICTION & VENUE

10.     This Court has jurisdiction over this lawsuit under 28 U.S.C. §1332(a)(1) because all Plaintiffs are citizens of different states from all Defendants, and the amount in controversy exceeds $75,000, excluding interest and costs.  This Federal Court sitting in diversity may exercise personal jurisdiction over Defendants under the Massachusetts long-arm statute, which permits jurisdiction over a person to the full extent of the due process clause of the United States Constitution.  Venue is proper in this Court under 28 U.S.C. §1391(a)(1) because all Defendants "reside" in this judicial district as that term is defined in 28 U.S.C. §1391(c) and other law, under 28 U.S.C. §1391(a)(2) in that a substantial part of the events or omissions giving rise to these claims arose in this judicial district, and/or, under 28 U.S.C. §1391(a)(3) because there is no district in which the action may otherwise be brought and at least one Defendant is subject to personal jurisdiction in this district.

**ANSWER:**     AstraZeneca states that paragraph 10 states legal conclusions to which no response is required.  To the extent that the allegations regarding jurisdiction over AstraZeneca are construed as factual allegations, AstraZeneca admits that it transacts business in Massachusetts, but denies that it engaged in tortious acts in Massachusetts.  AstraZeneca further denies that any defendant in this action is a Massachusetts resident.  AstraZeneca lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 10 regarding the citizenship of Plaintiffs, and therefore denies same.  To the extent that any remaining allegations of paragraph 10 are construed as factual allegations, they are denied.  AstraZeneca admits that this Court has subject matter jurisdiction over this action.

## IV.   FACTS

11.    At all times relevant herein, Defendants were in the business of designing, testing, monitoring, manufacturing, labeling, advertising, marketing, promoting, selling and distributing pharmaceuticals, including Seroquel, for use by the mainstream public, including Plaintiffs.

**ANSWER:**   AstraZeneca admits that, pursuant to FDA approval, it designed,

tests, monitors, manufactures, labels, advertises, markets, promotes, sells, and distributes

SEROQUEL® for prescription by licensed physicians in the United States.  AstraZeneca

denies that it sells prescription medications directly to the "mainstream public."

AstraZeneca denies any remaining or inconsistent allegations of paragraph 11.

12.    Seroquel is among a group of drugs known as "atypical antipsychotics" or "second generation antipsychotics," and was initially approved in September 1997 by the U.S. Food and Drug Administration (hereinafter the "FDA").

**ANSWER:**   AstraZeneca admits that SEROQUEL® is an "antipsychotic"

medication and belongs to a class of drugs referred to as "atypical antipsychotics."

AstraZeneca states that SEROQUEL® was approved by the FDA on September 26,

1997.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 12.

13.    The initial indication for Seroquel approved by the FDA was solely for the treatment of adults with schizophrenia, a relatively rare condition that affects less than one percent of the population of the United States.

**ANSWER:**   AstraZeneca states that SEROQUEL® was approved by the FDA

on September 26, 1997, and is indicated for the treatment of schizophrenia in adults.

AstraZeneca lacks knowledge or information sufficient to form a belief as to the truth of

the remaining allegations of paragraph 13, and therefore denies same.

14.    In January 2004, Defendants received FDA approval to market Seroquel for the short-term treatment of acute manic episodes associated with bipolar I disorder.

**ANSWER:**    AstraZeneca states that on January 12, 2004, the FDA approved

SEROQUEL® for use in the treatment of acute manic episodes associated with Bipolar I

disorder.  AstraZeneca denies that such approval was directed to any other defendant in

this action.  AstraZeneca denies any remaining or inconsistent allegations of paragraph

14.

15.    Like schizophrenia, bipolar 1 disorder is relatively rare, also affecting less
than one percent of the population of the United States.

**ANSWER:**    AstraZeneca lacks knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 15, and therefore denies same.

16.    Despite its limited approval, and relatively small indicated target
population, in 2005, Seroquel had become the thirteenth-best selling drug in the United
States, and has passed Zyprexa and Risperdal as the highest selling antipsychotic in the
United States.  Seroquel's worldwide sales in 1998, its first full year on the market were a
modest $63 million.  According to Defendants' 2005 Annual Report, worldwide Seroquel
sales exceeded $2.76 billion, which made Seroquel Defendants' second highest selling
drug behind only Nexium at $4.63 billon.

**ANSWER:**    AstraZeneca admits that worldwide sales of SEROQUEL® in

1998 were approximately $66 million.  AstraZeneca further admits that worldwide sales

of SEROQUEL® in 2005 were approximately $2.76 billion.  AstraZeneca admits that

worldwide sales of NEXIUM® in 2005 were approximately $4.63 billion.  AstraZeneca

states that the remaining allegations of paragraph 16 are conclusory, vague, and

ambiguous, and therefore AstraZeneca lacks knowledge or information sufficient to form

a belief as to the truth of those allegations and denies same.

17.    Critical to this blockbuster success was Defendants' aggressive marketing
of Seroquel, which consisted chiefly of overstating the drug's uses (including massive
off-label promotion), while understating and consciously concealing its life-threatening
side effects.

**ANSWER:**   AstraZeneca denies the allegations of paragraph 17.

18.     Medical literature dating back as far as the 1950s, demonstrated that Seroquel, like other atypical antipsychotics had the potential to cause diabetes, diabetes-related injuries (e.g. severe weight gain, hyperglycemia, diabetic ketoacidosis), pancreatitis, cardiovascular complications, and other severe adverse effects. Defendants' own pre-clinical studies regarding Seroquel confirmed this to Defendants. Despite this knowledge, Defendants never attempted to provide an adequate warning label until they were finally forced to do so by the FDA.

**ANSWER:**   AstraZeneca admits that there have been reports of weight gain and

hyperglycemia in people who were prescribed SEROQUEL®, but denies that

SEROQUEL® causes diabetes. AstraZeneca denies any remaining or inconsistent

allegations of paragraph 18.

19.     Shortly after Seroquel's product launch and first widespread usage, the number of adverse event reports involving diabetes-related illnesses associated with Seroquel, spiked. These reports were filed with the FDA's Medwatch database, all of which were reported and known to Defendants.

**ANSWER:**   AstraZeneca admits that, following the FDA's 1997 approval of

SEROQUEL® and its subsequent release into the market, adverse event reports involving

weight gain and hyperglycemia were filed with the FDA's MedWatch database.

AstraZeneca further admits that those adverse event reports are publicly available on the

FDA's MedWatch database. AstraZeneca denies that the allegations of paragraph 19

accurately characterize the type or number of adverse event reports filed with the

MedWatch database. To the extent the allegations of paragraph 19 are inconsistent with

the information contained on that database, they are denied. AstraZeneca denies any

remaining or inconsistent allegations of paragraph 19.

20.     On September 11, 2003, the FDA informed all manufacturers of atypical antipsychotic drugs, including Defendants, that due to an increasing prevalence of

diabetes-related illnesses associated with this class of drugs, all labeling must bear the following language in the Warnings section:

> Hyperglycemia, in some cases extreme and associated with ketoacidosis or hyperosmolar coma or death, has been reported in patients treated with atypical antipsychotics. Assessment of the relationship between atypical antipsychotic use and glucose abnormalities is complicated by the possibility of an increased background risk of diabetes mellitus in patients with schizophrenia and the increasing incidence of diabetes mellitus in the general population. Given these confounders, the relationship between atypical antipsychotic use and hyperglycemia-related adverse events is not completely understood. However, epidemiologic studies suggest an increased risk of treatment emergent hyperglycemia-related adverse events in patients treated with atypical antipsychotics. Precise risk estimates for hyperglycemia-related adverse events in patients treated with atypical antipsychotics are not available.

> Patients with an established diagnosis of diabetes mellitus who are started on atypical antipsychotics should be monitored regularly for worsening of glucose control. Patients with risk factors for diabetes mellitus (e.g., obesity, family history of diabetes) who are starting treatment with atypical antipsychotics should undergo fasting blood glucose testing at the beginning of treatment and periodically during treatment. Any patient treated with atypical antipsychotics should be monitored for symptoms of hyperglycemia including polydipsia, polyuria, polyphagia, and weakness. Patients who develop symptoms of hyperglycemia during treatment with atypical antipsychotics should undergo fasting blood glucose testing. In some cases, hyperglycemia has resolved when the atypical antipsychotic was discontinued; however, some patients required continuation of anti-diabetic treatment despite discontinuation of the suspect drug.

**ANSWER:**   AstraZeneca admits that it received a letter from the FDA dated September 11, 2003, directed to all manufacturers of atypical antipsychotics, which provided class labeling that included warnings related to glucose dysregulation.

AstraZeneca denies that SEROQUEL® causes diabetes.  AstraZeneca denies that

paragraph 20 accurately quotes the class labeling or accurately characterizes the FDA's

letter of September 11, 2003.  AstraZeneca denies any remaining or inconsistent

allegations of paragraph 20.

21.     Despite the FDA action, Defendants waited until January 30, 2004 to send
out a "Dear Doctor" letter attempting to advise treating physicians of the new warnings.
On April 22, 2004 Defendants were forced to send out a revised "Dear Doctor" letter due
to the fact that the first one was misleading, as it potentially downplayed the need to
continually monitor a patient's blood sugar levels while on the drug.  This critical
information did not make it into the *Physicians' Desk Reference* until the 2005 edition.

**ANSWER:**     AstraZeneca admits that it submitted a proposed Dear Health Care

Provider Letter to the FDA for review in the Fall of 2003, which, following approval by

the FDA, was issued on January 30, 2004.  AstraZeneca further admits that on April 22,

2004, it issued a second Dear Health Care Provider letter, which included information

inadvertently omitted from the January 30, 2004, letter.  AstraZeneca denies Plaintiffs'

characterization of the 2004 Dear Health Care Provider letters and specifically denies that

AstraZeneca was "forced" to issue a letter in April 2004 because "the first one was

misleading."  AstraZeneca denies any remaining or inconsistent allegations of paragraph

21.

22.     In January 2006, Defendants were notified that the U.S. Attorney's Office
in Los Angeles, California had commenced an investigation of Defendants' field
promotional activities related to its products, including Seroquel.

**ANSWER:**     AstraZeneca admits that in January of 2006 it received notice of an

investigation by the U.S. Attorney's Office in Los Angeles into field promotional

activities in the area served by AstraZeneca's Los Angeles regional business center.

AstraZeneca denies any remaining or inconsistent allegations of paragraph 22.

23.     Despite Defendants' knowledge regarding the safety risks its drug posed, they continued to ignore, downplay, sidestep, and delay the dissemination of open and frank information that patients and physicians needed to avoid the life-threatening injuries that Seroquel could cause.  As a result of this callous disregard for human safety in the name of profits, Plaintiffs have suffered the injuries, damages, and losses complained of herein.

**ANSWER:**    AstraZeneca denies the allegations of paragraph 23.

## V.    DISCOVERY RULE & FRAUDULENT CONCEALMENT

24.     The nature of the Plaintiffs' injuries and their relationship to Seroquel use were inherently undiscoverable; and, consequently, the discovery rule should be applied to toll the running of the statute of limitations until Plaintiffs knew or through the exercise of reasonable care and diligence should have known of the existence of their claims against Defendants.  Plaintiffs did not discover, and through the exercise of reasonable care and due diligence, could not have discovered, their injuries earlier.

**ANSWER:**    AstraZeneca states that the allegations contained in paragraph 24

of the Complaint are legal conclusions to which no response is required.  To the extent

that the allegations are construed as factual allegations, AstraZeneca denies same.

25.     Further, Plaintiffs did not have knowledge of facts that would lead a reasonable, prudent person to make inquiry to discover Defendants' tortious conduct. Under appropriate application of the "discovery rule," Plaintiffs' suit was filed well within the applicable statutory limitations period.

**ANSWER:**    AstraZeneca states that the allegations contained in paragraph 25

of the Complaint are legal conclusions to which no response is required.  To the extent

that the allegations are construed as factual allegations, AstraZeneca denies same.

26.     Defendants affirmatively and intentionally lulled, induced, and otherwise prevented Plaintiffs from discovering the existence of their various causes of action against Defendants through its fraudulent acts, omissions, concealments, and suppression of the dangers associated with its drug and other information necessary to put Plaintiffs on notice.  Plaintiffs have therefore been kept in ignorance of vital information essential to the pursuit of their claims, without any fault or lack of diligence on their part. Plaintiffs could not reasonably have discovered the fraudulent nature of Defendants' conduct.  Accordingly, Defendants are estopped from relying on any statute of limitations to defeat any of Plaintiffs' claims.

**ANSWER:**   AstraZeneca denies the allegations of paragraph 26.

## VI.   CAUSES OF ACTION

### A. STRICT PRODUCTS LIABILITY

27.   Defendants are liable as the manufacturers, distributors and/or sellers of Seroquel because Seroquel, when sold, was in a defective and unreasonably dangerous condition.  Defendants owed a strict duty to Plaintiffs not to harm Plaintiffs through the use of their drug.

**ANSWER:**   AstraZeneca states that the allegations of paragraph 27 are legal

conclusions to which no response is required.  To the extent that the allegations of

paragraph 27 are construed as factual allegations, they are denied.

### 1.   DESIGN DEFECT

28.   Seroquel was defective in design and/or formulation in that, when it left the hands of Defendants and/or its representatives, the foreseeable risks of serious harm posed by the drug outweighed its alleged benefits.  The foreseeable risks of serious harm were so great that Plaintiffs, and the general public, having known of such foreseeable risks and alleged benefits, would not have ingested Seroquel.

**ANSWER:**   AstraZeneca denies the allegations of paragraph 28.

29.   Seroquel was placed into the stream of commerce by Defendants, acting through authorized agents, servants, employees and/or representatives.  Plaintiffs were prescribed Seroquel by Plaintiffs' physicians and used the drugs in a manner reasonably foreseeable by Defendants.

**ANSWER:**   AstraZeneca admits that, pursuant to FDA approval, it distributes,

supplies, and sells SEROQUEL® for prescription by licensed physicians in the State of

Massachusetts and elsewhere in the United States.  AstraZeneca lacks knowledge or

information sufficient to admit or deny whether Plaintiffs were prescribed SEROQUEL®

by Plaintiffs' physicians or whether Plaintiffs used SEROQUEL® in a manner

reasonably foreseeable by AstraZeneca, and therefore denies same.  AstraZeneca denies

any remaining or inconsistent allegations of paragraph 29.

30.    The Seroquel ingested by Plaintiffs was expected to and did reach
Plaintiffs without substantial change in its condition as tested, manufactured, designed,
labeled, packaged, marketed and distributed.  As a result of their use of Seroquel,
Plaintiffs suffered severe, permanent and disabling injuries and related damages.

**ANSWER:**   AstraZeneca lacks knowledge or information sufficient to admit or

deny the allegation that the SEROQUEL® allegedly ingested by Plaintiffs reached

Plaintiffs without substantial change in its condition.  AstraZeneca denies the remaining

allegations of paragraph 30.

## 2.    MARKETING DEFECT-INADEQUATE AND IMPROPER WARNINGS

31.    Seroquel was marketed to physicians to be prescribed to their patients and
was marketed and advertised directly to the consuming public.  Seroquel, as
manufactured and supplied to healthcare professionals and the general public, was
unaccompanied by proper warnings regarding the serious risks of ingesting the drug.  The
information provided to consumers did not reflect Defendants' knowledge that Seroquel
was not safe and effective as indicated in its aggressive marketing campaign, nor were
consumers made aware that ingesting the drug could result in serious injury, pain and
discomfort and/or death.  Additionally, Defendants committed overt acts and issued
doublespeak in order to downplay the truth which began to surface.  This information
began to emerge in the form of adverse event reports, medical studies, and the 2003 FDA
labeling change mandate.  Any attempts by Defendants to satisfy its duty to warn were
compromised by the backdrop of Defendants' actions.  Full and proper warnings that
accurately and fully reflected the risks of serious injury and/or sudden death due to the
ingestion of Seroquel should have been disclosed by Defendants.

**ANSWER:**   AstraZeneca admits that, pursuant to FDA approval, it

manufactures, labels, advertises, markets, distributes, supplies, and sells SEROQUEL®

for prescription by licensed physicians in the State of Massachusetts and elsewhere in the

United States.  AstraZeneca denies the remaining allegations of paragraph 31.

32.     Plaintiffs were prescribed Seroquel by physicians who utilized the drug in a manner reasonably foreseeable by Defendants.  Seroquel was expected to and did reach Plaintiffs without substantial change in its condition as tested, manufactured, designed, labeled, packaged, marketed and distributed.  Plaintiffs were not aware of, and could not have reasonably discovered, the unreasonably dangerous nature of Seroquel.

**ANSWER:**     AstraZeneca lacks knowledge or information sufficient to admit or deny whether Plaintiffs were prescribed SEROQUEL® by their physicians or whether any such physicians used SEROQUEL® in a manner reasonably foreseeable by AstraZeneca.  AstraZeneca further lacks knowledge or information sufficient to admit or deny whether any SEROQUEL® reached Plaintiffs without substantial change in its condition.  AstraZeneca denies that SEROQUEL® is unreasonably dangerous in nature. AstraZeneca denies the remaining allegations of paragraph 32.

33.     As the producing cause and legal and direct result of the failure to warn consumers of the defective condition of Seroquel, as manufactured and/or supplied by Defendants and its representatives, Plaintiffs have suffered severe, permanent and disabling injuries and related damages.

**ANSWER:**     AstraZeneca denies the allegations of paragraph 33.

### B. NEGLIGENCE

34.     Defendants owed Plaintiffs legal duties in connection with putting Seroquel into the marketplace to be ingested by potential patients such as Plaintiffs. Defendants breached its duties, proximately causing Plaintiffs' injuries.  Specifically, Defendants failed to meet its duties to use reasonable care in the testing, creating, designing, manufacturing, labeling, packaging, marketing, selling, and warning of Seroquel.  Defendants is liable for acts and/or omissions amounting to negligence, gross negligence and/or malice including, but not limited to the following:

a.      Failure to adequately warn Plaintiffs and Plaintiffs' physicians of the respective known or reasonably foreseeable danger that Plaintiffs would suffer a serious injury or death by ingesting Seroquel;

b.      Failure to adequately warn Plaintiffs and Plaintiffs' physicians of the known or reasonably foreseeable danger that Plaintiffs would suffer a serious injury or death by ingesting Seroquel in unsafe doses;

     c.     Failure to use reasonable care in testing and inspecting Seroquel, so as to ascertain whether or not it was safe for the purpose for which it was designed, manufactured and sold;

     d.     Failure to use reasonable care in implementing and/or utilizing a reasonably safe design in the manufacture of Seroquel;

     e.     Failure to use reasonable care in the process of manufacturing Seroquel in a reasonably safe condition for the use for which it was intended;

     f.     Failure to use reasonable care in the manner and method of warning Plaintiffs and Plaintiffs' physicians as to the danger and risks of using Seroquel in unsafe doses;

     g.     Failing to use reasonable care in maintaining its continuing duty to warn Plaintiffs and Plaintiffs' physicians of after acquired knowledge;

     h.     Failure to use reasonable care under the circumstances in acquiring information about patient experience with actual usage of Seroquel, observed effects of Seroquel, monitoring and analyzing information on the quality, safety, efficacy, and all other aspects of reasonable vigilance and ongoing monitoring of a dangerous pharmaceutical (e.g. negligent pharmacovigilance); and,

     i.     Such further acts and/or omissions that may be proven at trial.

**ANSWER:**   AstraZeneca states that the allegations of paragraph 34, including all its subparts, are legal conclusions to which no response is required. To the extent that the allegations of paragraph 34 and its subparts are construed as factual allegations, AstraZeneca denies that paragraph 34 and its subparts fully and accurately state AstraZeneca's duties under the applicable law. AstraZeneca admits that, pursuant to FDA approval, it manufactures, distributes, supplies, and sells SEROQUEL® for prescription by licensed physicians in the United States. AstraZeneca denies the remaining allegations of paragraph 34, including all its subparts.

     35.    The above-described acts and/or omissions of Defendants were direct and proximate causes of Plaintiffs' injuries, diseases, and damages complained of herein.

**ANSWER:**   AstraZeneca denies the allegations of paragraph 35.

## C. Intentional Misrepresentation

36.   Defendants made material representations that were false and that were either known to be false when made or were asserted recklessly without knowledge of their truth.  These misrepresentations involved material facts concerning the character and quality of the drug in question, and reasonably implied to consumers that Seroquel was safe and would not cause injury.  Defendants failed to disclose material facts regarding the dangerous propensities of Seroquel that were known to Defendants and within the knowledge of Defendants.  Defendants were well aware of the lack of knowledge on behalf of consumers such as Plaintiffs, and of the incredible disparity between Defendants' and Plaintiffs' opportunity to fully appreciate and discover the dangerous character of Seroquel.  By failing to disclose the knowledge known and appreciated by Defendants, Defendants intended to induce Plaintiffs and their physicians into continuing to prescribe, purchase and use Seroquel without worry.  Without appropriate knowledge and the benefit and right of informed choice regarding the dangers known to Defendants, Plaintiffs' suffered the injuries, diseases, and damages complained of herein.

**ANSWER:**   AstraZeneca denies the allegations of paragraph 36.

37.   Defendants had in its possession adverse drug event reports, drug studies, and other documentation about Seroquel, and yet made the following misrepresentations:

a.   Misrepresentations regarding the respective frequency of Seroquel-related adverse event reports or occurrences in the drug's label, package insert or PDR label;

b.   Misrepresentations as to the respective existence, occurrence and frequency of occurrences, severity and extent of the overall risks of Seroquel;

c.   Misrepresentations as to the respective efficacy of Seroquel for both FDA approved and non-approved indications;

d.   Misrepresentations as to the respective number of adverse events and deaths reported with the use of Seroquel; and,

e.   Misrepresentations regarding the respective nature, seriousness, and severity of adverse events reported with the use of Seroquel.

**ANSWER:**   AstraZeneca denies the allegations of paragraph 37, including all its subparts.

38.     Defendants intended that these misrepresentations be relied upon by physicians, including Plaintiffs' physicians, healthcare providers and consumers. Plaintiffs did rely upon the misrepresentations that caused Plaintiffs' injuries.

**ANSWER:**   AstraZeneca denies the allegations of paragraph 38.

39.     As a proximate cause and legal and direct result of Defendants' misrepresentations, Plaintiffs' suffered the injuries, diseases, and damages complained of herein.

**ANSWER:**   AstraZeneca denies the allegations of paragraph 39.

### D. NEGLIGENT MISREPRESENTATION

40.     Long after Defendants became aware of the risks posed by the ingestion of Seroquel, Defendants failed to communicate those risks to Plaintiffs and the general public. Instead, Defendants continued to represent in its marketing that Seroquel was safe and effective.

**ANSWER:**   AstraZeneca denies the allegations of paragraph 40. By way of

further response, AstraZeneca states that the FDA has concluded that SEROQUEL® is

safe and effective when prescribed and used in accordance with the FDA-approved

labeling.

41.     Plaintiffs bring this cause of action against Defendants under the theory of negligent misrepresentation for the following reasons:

a.      Defendants, individually, and through its agents, representatives, distributors and/or employees, negligently misrepresented material facts about Seroquel, in that they made such misrepresentations when they knew or reasonably should have known of the falsity of such misrepresentations. Alternatively, Defendants made such misrepresentations without exercising reasonable care to ascertain the accuracy of these representations;

b.      These misrepresentations were made in the course of Defendants' sales of Seroquel to the general public, Plaintiffs and Plaintiff's physicians for the purpose of inducing continued sales and use of Seroquel;

c.      Defendants knew that the risk of severe physical harm existed as a result of its misrepresentations;

23

d.      Plaintiffs and Plaintiffs' healthcare providers justifiably relied on Defendants' misrepresentations; and

e.      Consequently, Plaintiffs ingested Seroquel to Plaintiffs' detriment.

**ANSWER:**   AstraZeneca denies the allegations of paragraph 41, including all its subparts.

42.     Defendants' negligent misrepresentations were direct and proximate causes of Plaintiffs' injuries, diseases, and damages complained of herein.

**ANSWER:**   AstraZeneca denies the allegations of paragraph 42.

### E. EXPRESS WARRANTY

43.     Defendants are merchants and/or sellers of Seroquel.  Defendants sold Seroquel to consumers, including Plaintiffs, for the ordinary purpose for which such drugs are used by consumers.  Defendants made representations to Plaintiffs about the quality or characteristics of Seroquel by affirmation of fact, promise and/or description.

**ANSWER:**   AstraZeneca admits that, pursuant to FDA approval, it sells

SEROQUEL® for prescription by licensed physicians in the United States.  AstraZeneca

denies the remaining allegations of paragraph 43.

44.     The representations by Defendants became part of the basis of the bargain between Defendants and Plaintiffs.  Seroquel did not comport with the representations made by Defendants in that it was not safe for the use for which it was marketed. Plaintiffs have notified Defendants that Defendants has breached its express warranties. This breach of warranty by Defendants was a proximate cause of the injuries and monetary loss suffered by Plaintiffs.

**ANSWER:**   AstraZeneca denies the allegations of paragraph 44.

### F. IMPLIED WARRANTY

1.    **WARRANTY OF MERCHANTABILITY**

45.     Defendants are merchants and/or sellers of Seroquel.  Plaintiffs purchased Seroquel as placed in the stream of commerce by Defendants and used it for the ordinary purpose for which such drugs are used by consumers.  At the time it was purchased by Plaintiffs, Seroquel was not fit for the ordinary purpose for which such drugs are used because it was not manufactured, designed or marketed in a manner to accomplish its

purpose safely.  Defendants' breach of its implied warranty of merchantability was a direct and proximate cause of Plaintiffs' injuries, diseases, and damages complained of herein.

**ANSWER:**   AstraZeneca admits that, pursuant to FDA approval, it sells

SEROQUEL® for prescription by licensed physicians in the United States.  AstraZeneca

denies the remaining allegations of paragraph 45.

2.    **WARRANTY OF FITNESS**

46.    Defendants placed Seroquel into the stream of commerce with the knowledge that Plaintiffs' were purchasing said drugs for a particular purpose.  Further, Defendants knew, or should have known, that Plaintiffs were relying on Defendants' skill or judgment to select goods fit for Plaintiffs' purpose.

**ANSWER:**   AstraZeneca denies the allegations of paragraph 46.

47.    Defendants delivered goods that were unreasonably dangerous and unfit for Plaintiffs' particular purpose, in that they were defectively designed and did not come with adequate warnings.

**ANSWER:**   AstraZeneca denies the allegations of paragraph 47.

48.    Defendants' failure to select and sell a product which was reasonably safe for its intended use was a direct and proximate cause of Plaintiffs' injuries, diseases, and damages complained of herein.

**ANSWER:**   AstraZeneca denies the allegations of paragraph 48.

**G. CIVIL CONSPIRACY**

49.    Defendants knowingly agreed, contrived, combined, confederated and conspired amongst themselves and with captured research groups, physicians, and trade groups to cause Plaintiffs' injuries, diseases, and damages by continuous downplaying of the risks associated with Seroquel in the name of more sales.  They further conspired to deprive consumers such as Plaintiffs of the opportunity of informed free choice as to whether to use Seroquel or to expose themselves to its hidden dangers.  Defendants committed the above described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of Seroquel.

**ANSWER:**   AstraZeneca denies the allegations of paragraph 49.

50.     In furtherance of said conspiracies, Defendants and its co-conspirators performed the following overt acts:

a.      For years, Defendants and its co-conspirators, have been in possession of medical and scientific data, literature, test reports, doctors' inquiries and adverse event reports which clearly indicated that Seroquel and other antipsychotic drugs could cause diabetes, diabetes-related injuries (e.g. severe weight gain, hyperglycemia, diabetic ketoacidosis), pancreatitis, cardiovascular complications, and other severe adverse effects; and,

b.      Despite the medical and scientific data, literature, and test reports possessed by and available to Defendants, Defendants and its co-conspirators fraudulently, willfully, and maliciously:

    i.      Withheld, concealed, and suppressed said medical and scientific data, literature, test reports, doctors' inquiries and adverse event reports regarding the risks of diabetes, diabetes-related injuries (e.g. severe weight gain, hyperglycemia, diabetic ketoacidosis), pancreatitis, cardiovascular complications, and other severe adverse effects from the general public, Plaintiffs and Plaintiffs' physicians; and

    ii.     Caused to be released, published and disseminated medical and scientific data, literature, test reports, and marketing and promotional materials containing information and statements regarding the risks of diabetes, diabetes-related injuries (e.g. severe weight gain, hyperglycemia, diabetic ketoacidosis), pancreatitis, cardiovascular complications, and other severe adverse effects, which Defendants knew were incorrect, incomplete, outdated and misleading.

**ANSWER:**     AstraZeneca denies the allegations of paragraph 50, including all its subparts.

51.     By the false and fraudulent representations, omissions and concealments set forth above, Defendants and its co-conspirators intended to induce Plaintiffs and Plaintiffs' physicians to rely upon said false and fraudulent representations, omissions and concealments, to continue to expose themselves to the dangers inherent in the use of Seroquel.

**ANSWER:**     AstraZeneca denies the allegations of paragraph 51.

52.     As a result of their participation in the joint venture of designing, testing, monitoring, manufacturing, labeling, advertising, marketing, promoting, selling and

distributing Seroquel, all Defendants can be held liable jointly and severally for Plaintiffs' injuries, diseases, and damages complained of herein.

**ANSWER:**   AstraZeneca states that the allegations of paragraph 52 are legal

conclusions to which no response is required.  To the extent that the allegations of

paragraph 52 are construed as factual allegations, they are denied.

53.   Defendants' participation in this conspiracy was a direct and proximate cause of Plaintiffs' injuries, diseases, and damages complained of herein.

**ANSWER:**   AstraZeneca denies the allegations of paragraph 53.

## VII.   DAMAGES

54.   Upon trial of this case, Plaintiffs respectfully request the Court and Jury to determine the amount of loss Plaintiffs have incurred in the past and will incur in the future, not only from a financial standpoint, but also in terms of good health and freedom from pain and worry.  There are certain elements of damages provided by law that Plaintiffs are entitled to have the Jury separately consider to reasonably compensate Plaintiffs for the injuries, damages and losses incurred, as well as those to be incurred in the future.  Plaintiffs have been damaged as a result of Defendants' acts and omissions complained of herein in the following particulars:

a.   Plaintiffs have incurred medical, pharmaceutical, hospital, and related expenses and may be reasonably expected to incur additional expenses in the future due to the progressive nature of their injuries;

b.   The likely progression and related life-threatening medical conditions reasonably anticipated to accompany Plaintiffs' injuries will require lifetime medical monitoring as well as domestic help and nursing care as their conditions deteriorates;

c.   Plaintiffs are subject to an extraordinarily increased likelihood of developing heart disease, strokes, high blood pressure, blindness, kidney disease, nervous system disease, amputations, dental disease, pregnancy complications, sexual dysfunction, and other diabetes related complications;

d.   Plaintiffs have endured pain and suffering, mental and emotional anguish and anxiety, and loss of the enjoyment of a normal life as a result of their injuries, and they will continue to endure the same in the future;

e.  Plaintiffs have had their future wage earning capacity impaired as a result of their injuries;

f.  Plaintiffs will likely suffer from a degree of permanent physical impairment, disability, and disfigurement as a result of their injuries as they progress in the future;

g.  Plaintiffs have been and will otherwise be prevented from participating in and enjoying the benefits of a full and complete life;

h.  Plaintiffs' spouses, where named, also seek damages for loss of consortium; and,

i.  Plaintiffs assert a claim for prejudgment interest on all elements of damages as allowed by law.

**ANSWER:**   To the extent paragraph 54 and its subparts state legal conclusions, no response is required.  To the extent that the allegations of paragraph 54, including all it subparts, are construed as factual allegations, they are denied.

## VIII.   WRONGFUL DEATH & SURVIVAL DAMAGES

55.   In the case where Plaintiffs have suffered a wrongful death due to Defendants' acts and omissions complained of herein, Plaintiffs' heirs and representatives seek compensation for the following general and special damages including, but not limited to, damages for survival and wrongful death claims that Plaintiffs have sustained both in their individual capacity and as personal representatives of the estate:

a.  The conscious physical pain and suffering sustained by Decedent prior to their death;

b.  The mental anguish sustained by Decedent prior to their death;

c.  The physical impairment suffered by Decedent prior to their death;

d.  The disfigurement suffered by Decedent prior to their death;

e.  Reasonable and necessary medical expenses incurred by Decedent prior to their death;

f.  Reasonable funeral and burial expenses incurred by Decedent and their estate;

g.    Decedent's lost earning capacity;

h.    The loss of household services, consortium, pecuniary loss, companionship and society which Plaintiffs received from Decedent prior to their last illnesses and death;

i.    The mental anguish suffered by Plaintiffs as a consequence of the last illnesses and death of Decedent; and,

j.    Prejudgment interest on all elements of damages as allowed by law.

**ANSWER:**    AstraZeneca denies the allegations of paragraph 55, including all its subparts.

## VIII.  PUNITIVE DAMAGES[1]

56.    At all times relevant hereto, Defendants had actual knowledge of the defective nature of Seroquel as set forth herein and continued to design, manufacture, market, distribute and sell it so as to maximize sales and profits at the expense of the public's health and safety and in conscious disregard of the foreseeable serious harm caused by the drug. Defendants' conduct exhibits such an entire want of care as to establish that its actions were a result of fraud, ill will, recklessness, gross negligence, malice and/or willful and intentional disregard for the safety and rights of consumers of its drugs such as Plaintiffs. Plaintiffs are therefore entitled to punitive damages.

**ANSWER:**    AstraZeneca denies the allegations of paragraph 56.

## FIRST AFFIRMATIVE DEFENSE

Plaintiffs' alleged injuries were proximately caused by circumstances, events, or persons over whom AstraZeneca had no authority or control and for which AstraZeneca is not answerable in damages to Plaintiffs.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs and their agents, including Plaintiffs' Physicians, assumed the risks, if any, inherent in the use of SEROQUEL®.

---

[1] This section is erroneously numbered VIII in Plaintiffs' Complaint. For consistency, the numbering of Plaintiffs' Complaint is repeated here.

## THIRD AFFIRMATIVE DEFENSE

To the extent Plaintiffs' claims were caused by the actions, omissions or products of persons or entities, over whom AstraZeneca has no dominion, authority or control, AstraZeneca is entitled to have its liability to the Plaintiffs, if any, reduced as a result of the negligence or fault of said persons or entities, pursuant to applicable law.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' recovery is barred and/or should be reduced under applicable law because of Plaintiffs' contributory negligence or fault and/or comparative negligence or fault.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' alleged injuries, if related to Plaintiffs' use of SEROQUEL®, were caused by an unforeseeable material and substantial alteration, change, improper handling, or misuse of the product after it left the control of AstraZeneca.

## SIXTH AFFIRMATIVE DEFENSE

The New Drug Application for SEROQUEL® was approved by the United States Food and Drug Administration under the applicable statute, 21 U.S.C. § 301 *et seq.*, and regulations promulgated thereunder.  Compliance with such statutes and regulations by AstraZeneca demonstrates that SEROQUEL® was safe and effective and not unreasonably dangerous and, further, preempts and bars Plaintiffs' claims against AstraZeneca.  Compliance with such regulations also demonstrates that due care was exercised with respect to the design, manufacture, testing, marketing and sale of this prescription drug, and that it was neither defective nor unreasonably dangerous.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are preempted, in whole or in part, by federal law pursuant to the Supremacy Clause of the United States Constitution because of the pervasive federal regulation of prescription drug manufacturing, testing, marketing, and labeling.

## EIGHTH AFFIRMATIVE DEFENSE

All labeling for SEROQUEL® has been approved by the United States Food and Drug Administration under the applicable statute, 21 U.S.C. § 201 *et seq.*, and regulations promulgated thereunder.  As the agency charged with implementing the Food, Drug, and Cosmetic Act, the FDA affirmatively has stated that "under existing preemption principles, FDA approval of labeling . . . preempts conflicting or contrary State law." 71 *Fed. Reg.* at 3,934.  Moreover, the FDA has stated, "Given the comprehensiveness of FDA regulation of . . . labeling under the act, additional requirements for the disclosure of risk information are not necessarily more protective of patients.  Instead, they can erode and disrupt the careful and truthful representations of benefits and risks that prescribers need to make appropriate judgments about drug use.  Exaggeration of risk could discourage appropriate use of a beneficial drug." *Id*. at 3,935.  Plaintiffs' claims based on the labeling for SEROQUEL® are therefore preempted by federal law pursuant to the Supremacy Clause of the United States Constitution.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims against AstraZeneca are barred as a matter of law pursuant to relevant provisions of the Restatement (Third) of Torts and the Restatement (Second) of Torts, including, but not limited, to Section 402A, comment k.

## TENTH AFFIRMATIVE DEFENSE

Persons other than AstraZeneca stood in the position of learned intermediary between Plaintiffs and AstraZeneca which therefore owed and breached no duty to warn Plaintiffs directly, and the SEROQUEL® Plaintiffs allegedly used was therefore neither unreasonably dangerous nor defective by virtue of any alleged absence of adequate warnings or instructions.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' Complaint fails to state a claim upon which relief can be granted against AstraZeneca in that the methods, standards, and techniques utilized with respect to the design, manufacture, marketing and sale of the prescription drug SEROQUEL®, including adequate warnings and instructions with respect to the product's use included in the product's package insert and other literature, conformed to the applicable state of the art, and the applicable standard of care based upon available medical and scientific knowledge.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitations and/or repose.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' Complaint against AstraZeneca fails to state a claim upon which relief may be granted.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims against AstraZeneca are barred, in whole or in part, by laches, waiver and/or estoppel.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' failure to mitigate alleged damages.

## SIXTEENTH AFFIRMATIVE DEFENSE

The injuries and damages claimed by Plaintiffs, if any, resulted from an intervening or superseding cause and/or causes, and any act or omission on the part of AstraZeneca was not the proximate and/or competent producing cause of such alleged injuries and damages.

## SEVENTEENTH AFFIRMATIVE DEFENSE

The alleged injuries and damages, if any, were the result of unavoidable circumstances that could not have been prevented by any person, including AstraZeneca.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' Complaint fails to state a claim upon which relief can be granted for several or joint and several liability.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part because the commercial speech relating to SEROQUEL® was not false or misleading and is protected under the First Amendment to the United States Constitution and the applicable state constitution.

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiffs' claims regarding warnings and labeling are barred in whole or in part by the doctrine of primary jurisdiction, in that the FDA is charged under law with determining the content of warnings and labeling for prescription drugs.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

This Court should abstain from adjudicating Plaintiffs' claims relating to warnings and labeling in deference to the interpretation of regulations relating to prescription drug labeling by the FDA.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Upon information and belief, each item of economic loss alleged in the Complaint was, or with reasonable certainty will be, replaced or indemnified in whole or in part from collateral sources.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

Plaintiffs did not detrimentally rely on any labeling, warnings, or information concerning SEROQUEL®.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' alleged injuries and damages, if any, were the result of an idiosyncratic reaction which AstraZeneca could not reasonably foresee.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiffs, or Plaintiffs' physicians, were aware or should have been aware of any potential hazards reported to be associated with the use of SEROQUEL® and appreciated or should have appreciated these potential hazards based, in part, on the directions,

information, and warnings provided by AstraZeneca and others generally available in the medical and scientific literature. Therefore, Defendant AstraZeneca had no duty to warn of any alleged danger or defect.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiffs are barred from recovering any damages by virtue of the fact that there was no practical or technically feasible alternative design or formulation that would have prevented the harm alleged by the Plaintiffs without substantially impairing the usefulness or intended purpose of the product.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims for breach of warranty are barred because Plaintiffs failed to give timely notice of any alleged breach of warranty.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

AstraZeneca did not sell or distribute the prescription drug SEROQUEL® directly to Plaintiffs, and Plaintiffs did not receive or rely upon any representations or warranties as alleged in the Complaint. Plaintiffs' claims for breach of warranty are therefore barred by lack of privity between Plaintiffs and AstraZeneca.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims for breach of warranty, express or implied, are barred by the applicable provisions of the applicable state's Uniform Commercial Code.

## THIRTIETH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, to the extent that they purport to impose liability upon AstraZeneca for any conduct in which it engaged in the exercise of

its rights under federal law, including, without limitation, the Constitution of the United States and the First Amendment thereto.

### THIRTY-FIRST AFFIRMATIVE DEFENSE

Plaintiffs' Complaint fails to state a claim for which relief can be granted for fraud, misrepresentation, omission, or concealment insofar as Plaintiffs have failed to plead such claims with sufficient particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure.

### THIRTY-SECOND AFFIRMATIVE DEFENSE

Plaintiffs' Complaint fails to state a claim for which relief can be granted for fraud, misrepresentation, omission, or concealment.

### THIRTY-THIRD AFFIRMATIVE DEFENSE

This Court is not the proper forum and is not a convenient forum for the adjudication of Plaintiffs' claims.

### THIRTY-FOURTH AFFIRMATIVE DEFENSE

This Court is not the proper venue.

### THIRTY-FIFTH AFFIRMATIVE DEFENSE

The joinder of multiple plaintiffs in this action is improper under Fed. R. Civ. P. 20 and 21.

### THIRTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' Complaint fails to state a claim against AstraZeneca upon which relief can be granted for punitive damages.

### THIRTY-SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claim for punitive damages is barred under the applicable state and federal law, including *State Farm Mut. Auto. Ins. Co. v. Campbell et al.*, 538 U.S. 408 (2003). Permitting recovery of punitive damages in this action would contravene AstraZeneca's rights as reserved by the Fifth, Seventh, Eighth, and Fourteenth Amendments to the United States Constitution and other provisions of the United States Constitution and the applicable state constitutions.

### THIRTY-EIGHTH AFFIRMATIVE DEFENSE

Unless AstraZeneca's liability for punitive damages and the appropriate amount of punitive damages are required to be established by clear and convincing evidence, any award of punitive damages would violate AstraZeneca's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by the applicable state constitutions, and also would be improper under the applicable state common law and public policies.

### THIRTY-NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claim for punitive damages against AstraZeneca cannot be maintained, because an award of punitive damages would be void for vagueness, both facially and as applied. Among other deficiencies, there is an absence of adequate notice of what conduct is subject to punishment; an absence of adequate notice of what punishment may be imposed; an absence of a predetermined limit, such as a maximum multiple of compensatory damages or a maximum amount, on the amount of punitive damages that a jury may impose; a risk that punitive damages will be imposed retrospectively based on

conduct that was not deemed punishable at the time the conduct occurred; and it would

permit and encourage arbitrary and discriminatory enforcement, all in violation of the due

process clause of the Fourteenth Amendment to the United States Constitution, the

applicable state constitutions, and the applicable state common law and public policies.

## FORTIETH AFFIRMATIVE DEFENSE

Plaintiffs' claim for punitive damages against AstraZeneca cannot be maintained

because any award of punitive damages would be by a jury that: (1) is not provided

standards of sufficient clarity for determining the appropriateness, and the appropriate

size, of a punitive damages award; (2) is not adequately instructed on the limits on

punitive damages imposed by the applicable principles of deterrence and punishment; (3)

is not expressly prohibited from awarding punitive damages, or determining the amount

of an award of punitive damages, in whole or in part, on the basis of invidiously

discriminatory characteristics, including the residence, wealth, and corporate status of

AstraZeneca; (4) is permitted to award punitive damages under a standard for

determining liability for punitive damages that is vague and arbitrary and does not define

with sufficient clarity the conduct or mental state that makes punitive damages

permissible; and (5) is not subject to adequate trial court and appellate judicial review for

reasonableness and furtherance of legitimate purposes on the basis of objective standards.

Any such verdict would violate AstraZeneca's due process rights guaranteed by the

Fourteenth Amendment to the United States Constitution and by the applicable state

constitutions, and also would be improper under the applicable state common law and

public policies.

### FORTY-FIRST AFFIRMATIVE DEFENSE

To the extent that the applicable state law permits punishment to be measured by the net worth or financial status of AstraZeneca and imposes greater punishment on defendants with larger net worth, such an award would be unconstitutional because it permits arbitrary, capricious and fundamentally unfair punishments, allows bias and prejudice to infect verdicts imposing punishment, and allows dissimilar treatment of similarly situated defendants, in violation of the due process and equal protection provisions of the Fourteenth Amendment to the United States Constitution, the Commerce Clause of the United States Constitution, and the applicable state constitutions.

### FORTY-SECOND AFFIRMATIVE DEFENSE

With respect to Plaintiffs' demand for punitive damages, AstraZeneca specifically incorporates by reference any and all standards or limitations regarding the determination or enforceability of punitive damages awards under federal law and the applicable state law.

### FORTY-THIRD AFFIRMATIVE DEFENSE

No act or omission of AstraZeneca was willful, unconscionable, oppressive, fraudulent, wanton, malicious, reckless, intentional, or with actual malice, with reckless disregard for the safety of Plaintiffs or with conscious disregard and indifference to the rights, safety and welfare of Plaintiffs, and therefore Plaintiffs' Complaint fails to state a claim upon which relief can be granted for punitive damages.

## FORTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' Complaint seeks damages in excess of those permitted by law. AstraZeneca asserts any statutory or judicial protection from punitive damages which is available under the applicable law, and any award of punitive damages is barred.

## FORTY-FIFTH AFFIRMATIVE DEFENSE

AstraZeneca has not knowingly or intentionally waived any affirmative defenses and asserts all defenses available under applicable law.  AstraZeneca reserves the right to modify, clarify, amend, or supplement these separate or affirmative defenses as discovery proceeds in this case.

## JURY DEMAND

AstraZeneca hereby demands a trial by jury.

## PRAYER

WHEREFORE, AstraZeneca prays that this Court enter judgment on its behalf and against Plaintiffs, that Plaintiffs take nothing thereby, and that the Court grant AstraZeneca such other and further relief as allowed by law.

This the 9th day of January, 2007.

Respectfully submitted,

ASTRAZENECA LP and
ASTRAZENECA PHARMACEUTICALS
LP

BY _____
Michael W. Davis
Tamar B. Kelber
Nathan A. Huey
Katherine E. Graf
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Telephone:        (312) 853-7000
Facsimile:        (312) 853-7036
E-Mail:           mdavis@sidley.com
                  tkelber@sidley.com
                  nhuey@sidley.com
                  kgraf@sidley.com

Fred T. Magaziner
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Telephone:        215-994-4000
Facsimile:        215-944-2222
E-Mail:           fred.magaziner@
                  dechert.com

Robert L. Ciotti
Jason A. Perkins
CARLTON FIELDS, P.A.
Corporate Center Three at International
Plaza
4221 W. Boy Scout Boulevard
Suite 1000
Post Office Box 3239
Tampa, Florida  33607-5736
Telephone:        813.223.7000

41

Facsimile:      813.229.4133
E-mail:         rciotti@
                 carltonfields.com
                 jperkins@
                 carltonfields.com

Attorneys for AstraZeneca LP and
AstraZeneca Pharmaceuticals LP

## CERTIFICATE OF SERVICE

I hereby certify that on _January 9th_, I electronically filed the foregoing Answer of AstraZeneca LP and AstraZeneca Pharmaceuticals LP to Plaintiffs' Original Complaint by using the CM/ECF system.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:


_____   Attorney

Matthew F. Pawa
Benjamin A. Krass
LAW OFFICES OF MATTHEW F. PAWA, P.C.
1280 Centre Street, Ste. 230
Newton Centre, MA 02459

K. Camp Bailey
Michael W. Perrin
F. Kenneth Bailey, Jr.
BAILEY PERRIN BAILEY LLP
440 Louisiana Street, Ste. 2100
Houston, TX 77002

43